<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS PYO, on behalf of himself and all others similarly situated,<br><br>                             Plaintiff,<br><br>v.<br><br>WICKED FASHIONS, INC., ET AL.<br><br>                         Defendants. | Civ. No. 09-2422 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
by:  Steven I. Adler, Esq., Damian L. Albergo, Esq., Damon Thomas Kamvosoulis, Esq., Edward
S. Kiel, Esq., and Gerald H. Kline, Esq.
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, NJ 07602

KIM, CHO & LIM, LLC
by:  Seoung Y. Lim, Esq.
460 Bergen Boulevard, Suite 201
Palisades Park, NJ 07650

      *Attorneys for Plaintiffs*

EPSTEIN, BECKER & GREEN, P.C.
by:  Lauren D. Daloisio, Esq., Carmine A. Iannaccone, Esq., and Michael D. Thompson, Esq.
Two Gateway Center, 12th Floor
Newark, NJ 07102

      *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a Motion to Compel Arbitration submitted by

Defendant Wicked Fashions, Inc. ("Wicked").  Plaintiff Thomas Pyo, a former Wicked

employee, filed a Complaint on May 20, 2009 in which he asserts that Wicked engaged in

national origin discrimination and labor law violations by requiring employees of Korean

national origin to work overtime without pay while not imposing similar requirements on

employees of non-Korean antecedents.  Based on that allegation, he filed this case as a purported

class action behalf of himself and all others current or former Wicked employees of Korean

origin asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

2000a et seq., the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1

et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and various New Jersey

statutes regulating employee compensation.

In the pending Motion, Wicked contends that Plaintiff's suit is barred by an "Arbitration

Agreement and Policy" (the "Arbitration Agreement") he executed on his first day of work.  The

Arbitration Agreement provides that all disputes between the parties will be submitted to binding

arbitration before the American Arbitration Association ("AAA"), and thus would appear to

require that this action be dismissed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §

4.  Plaintiff argues, however, that the Agreement is unenforceable because it is both procedurally

and substantively unconscionable.  In support of that claim, he notes that the Agreement was

presented to him on a "take-it-or-leave-it" basis as part of series of documents he was given at

the beginning of his work for Wicked.  Moreover, he claims that the Arbitration Agreement

grants unfair advantages to Wicked by (1) precluding him seeking injunctive relief while

2

imposing no similar requirement on the company, (2) prohibiting the recovery of punitive damages, (3) infringing on his ability to present evidence in support of his claims by stating that he waives certain discovery rights, (4) imposing a one-year statute of limitations on all claims against the company while not including a similar requirement for suits by Wicked against its employees, (5) requiring that he pay exorbitant arbitration fees, and (6) providing that he may not recover attorneys' fees even if he prevails on claims against the company.

For the reasons set forth below, Wicked's Motion to Compel Arbitration will be granted and the action will be dismissed. The manner in which Plaintiff was induced to execute the Arbitration Agreement, though brief and marked by a disparity in bargaining power, was not procedurally unconscionable. The portions of that Agreement are substantively unconscionable either include caveats stating that they apply only as allowed by law and will therefore be superseded by the conflicting precedents noted by Plaintiff or can be severed without rendering the Agreement void in its entirety.

## I. BACKGROUND

On April 10, 2006, Plaintiff's first day of work for Wicked, he was required to undergo an "orientation" at which a members of the company's human resources staff presented him with the Arbitration Agreement and several other documents. Plaintiff claims that the human resources representative was "in a hurry," and did not advise him of the contents of the documents. Despite not knowing what terms and conditions they contained, however, Plaintiff immediately signed and returned the documents, including the Arbitration Agreement. The following paragraph appears on that document just above the line on which Plaintiff signed:

BINDING AGREEMENT:
BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOU
HAVE CAREFULLY READ AND CONSIDERED THE FOREGOING

3

ARBITRATION AGREEMENT AND POLICY, THAT YOU UNDERSTAND IT AND THAT YOU KNOWINGLY AND VOLUNTARILY AGREE TO IT AND ACCEPT ALL OF ITS PROVISIONS.

The substantive terms of the Arbitration Agreement were relatively brief, consisting of roughly one and a half pages of type, and were worded in a straightforward manner.  The first paragraph of that document provided that all disputes between the company and its employees would be subject to binding arbitration before the AAA, stating in relevant part:

> Wicked Fashions believes that mandatory arbitration that is mutual and binding on all parties to the employment relationship is the quickest, least expensive and best overall method for resolving most employment and other disputes. Accordingly, you understand and agree that any dispute or claim between you and Wicked Fashions or any other person employed by an agent of or a partner of Wicked Fashions arising out of or in connection with any aspect whatsoever of your … employment with the firm, termination of such employment, and any other related issue … shall be submitted to and finally determined before a panel of arbitrators according to the rules of the American Arbitration Association ("AAA").

The following paragraph explicitly provided that employment discrimination claims such as those at issue in this suit would be subject to arbitration, stating that the scope of the Arbitration Agreement included:

> **COVERAGE OF ALL CLAIMS OF ANY KIND:**
> THE DISPUTES OR CLAIMS SUBJECT TO ARBITRATION INCLUDE ANY AND ALL CLAIMS, DEMANDS OR ACTIONS OF ANY KIND INVOLVING YOU AND WICKED FASHIONS, INCLUDING THOSE RELATED TO EMPLOYMENT, EMPLOYMENT DISCRIMINATION, COMPENSATION OR BENEFITS, AND INCLUDING ANY … CLAIM UNDER ANY FEDERAL, STATE OR LOCAL STATUTE … SUCH AS TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, … THE FAIR LABOR STANDARDS ACT … AND ANY SIMILAR FEDERAL, STATE, OR LOCAL STATUTE.

Under a separate section, the Arbitration Agreement provided that, by agreeing to that document, Plaintiff waived certain rights, stating:

4

**WAIVER/MODIFICATION OF RIGHT OF EMPLOYEE TO JUDICIAL HEARING, JURY, PUNITIVE DAMAGES, APPEAL, DISCOVERY AND CERTAIN OTHER RIGHTS;**
YOU UNDERSTAND THAT THIS ARBITRATION AGREEMENT AND POLICY MAKES ARBITRATION THE REQUIRED AND EXCLUSIVE FORUM FOR DISPUTES AS SET FORTH HEREIN AND THAT YOU KNOWINGLY AND VOLUNTARILY WAIVE ANY JURY TRIAL RIGHT THAT YOU MIGHT OTHERWISE HAVE AND OTHER RIGHTS AS SET FORTH IN THIS ARBITRATION AGREEMENT AND POLICY.  To the fullest extent permitted by law, you waive any right to any discovery procedures and to participate in any class action claim, except as set forth in the Rules of the AAA….  You also waive any applicable statute of limitations and agree to submit for arbitration any dispute or claim arbitrable under this Arbitration Agreement and Policy WITHIN ONE YEAR OF WHEN THE DISPUTE OR CLAIM AROSE.  Please note that this waiver as to the statute of limitations is not reciprocal (i.e., Wicked Fashions is not providing a similar waiver).

The next paragraph of the Arbitration Agreement stated that its terms would be "construed and enforced in accordance with the laws of the State of New Jersey," and prohibited the recovery of attorneys' fees or punitive damages in any action by an employee, stating in part that:

New Jersey's rules precluding arbitrators from awarding punitive damages shall apply in every proceeding under this Arbitration Agreement and Policy.  Unless otherwise required by law, each party must pay its own legal costs and fees in the arbitration (and any related proceeding)….  Unless otherwise required by law, the arbitrator(s) … may not award special, exemplary, or punitive damages of any kind regardless of the nature or form of the dispute or claim, … may not award attorneys' fees or legal costs, and shall render the award in accordance with this Arbitration Agreement and Policy.  The arbitrator(s) may not award injunctive relief, unless so required by law.

Finally, the Arbitration Agreement included a provision titled "**SEVERABILITY OF TERMS**," which stated that:

If any term or provision of this arbitration agreement and policy is determined to be invalid, void, or unenforceable the remainder of the terms and provisions of this Arbitration Agreement and Policy shall remain in full force and effect, and shall in no way be affected, impaired, or invalidated by such determination.

On December 18, 2008, Wicked terminated Plaintiff's employment.  Wicked stated in its submissions relating to the pending Motion that Plaintiff's termination was part of a "reduction in force," and there is no indication in the record that Plaintiff was unable to complete his duties at Wicked or committed any form of misconduct during his tenure at the company.

Following his termination, Plaintiff consulted counsel regarding the employment discrimination claims he asserts in this action, who in turn contacted Wicked.  In an apparent effort to preempt Plaintiff instituting a court action based on those claims, Wicked on April 30, 2009 filed a Demand for Arbitration asking that the AAA resolve the dispute between the parties pursuant to the Arbitration Agreement.  Plaintiff refused to submit his claims to the AAA, and instead filed the Complaint out of which this litigation arises on May 20, 2009.  In lieu of an Answer, Wicked filed the pending Motion to Compel Arbitration.

## II.  DISCUSSION

The question of whether Plaintiff's claims should be referred to arbitration is governed by the FAA.  That statute was originally enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947.  The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  In order to do so, the FAA provides that contract provisions manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of proceedings in federal district courts when an issue in those proceedings is referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed, neglected, or refused to comply with an arbitration

agreement.  9 U.S.C. §§ 2, 3, 4.  The cumulative effect of those provisions "manifest[s] a liberal federal policy favoring arbitration agreements."  Gilmer, 500 U.S. at 24 (quotations omitted).  Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

 Prior to referring a controversy to arbitration, the Court must first determine whether the parties have a valid arbitration agreement.  Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003).  That determination consists of three prongs:  (1) whether the parties agreed to arbitrate; (2) whether the dispute is within the scope of the agreement; and (3) whether Congress intended the dispute to be non-arbitrable.  Sarbak v. Citigroup Global Markets, Inc., 354 F. Supp. 2d 531, 536-37.

Plaintiff concedes that the Arbitration Agreement at issue in this case satisfies those criteria, but argues that the Court should decline to enforce that Agreement because it is unconscionable.  (Pl.'s Br. Opp'n Mot. Compel Arbitration 1) ("[T]he issue presented is not whether Pyo signed the arbitration agreement or whether his claims fall within the scope of the arbitration agreement.  The issue before the Court is whether it should enforce an arbitration agreement that is inherently unfair and unconscionable.")  Rather than disputing the applicability of the FAA, that defense implicates state law contract principles.  See Doctor's Assocs., Inc. v. Cassarotto, 517 U.S. 671, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.").

Under New Jersey law, a contract may be either procedurally or substantively unconscionable.  The former arises out of defects in the process by which the contract was

formed, and "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting" at the time of agreement.  Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002).  Substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock the court's conscience."  Id.  A court finding either form of unsconscionability has broad discretion over the remedy applied.  The court may refuse to enforce the entire agreement, strike the unconscionable provision and enforce the remainder of the agreement, or limit the application of the unconscionable provision so as to avoid an unconscionable result.  N.J. Stat. Ann. § 12A:2-302

Plaintiff contends that the Arbitration Agreement at issue in this case is both procedurally and substantively unconscionable.  For the sake of simplicity, the Court will address those arguments in turn.

**A.  Procedural Unconscionability**

Plaintiff claims the Arbitration Agreement is procedurally unconscionable for two reasons.  First, he asserts that he was not given time to read that Agreement or informed that it would result in a waiver of his rights.  Additionally, he claims that the enforcement of the Arbitration Agreement would be unfair because disparities between his bargaining power and that of Wicked resulted in a situation where he lacked the ability to refuse to enter the Agreement or negotiate a modification of its terms.  In support of the second argument, Plaintiff claims that representatives of Wicked told him he could not begin work until he accepted the Arbitration Agreement, and alleges that, as "an unemployed recent college graduate with substantial student loans," he "needed this job."  (Pl.'s Br. Opp'n Mot. Compel Arbitration.)

8

The latter argument is, in essence, a claim that the Arbitration Agreement is a "contract of adhesion." That term is commonly applied to agreements that are "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Muhammad v. County Bank of Rehoboth Beach, Del., 912 A.2d 88, 96 (N.J. 2006). Such agreements "necessarily involve indicia of procedural unconscionability," but "[t]he determination that a contract is one of adhesion … is the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." Id. at 96-97 (quotations and citations omitted). Rather, a court evaluating whether a contract of adhesion is procedurally unconscionable must look "not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract." Id. at 97.

Consideration of those factors requires the conclusion that the Arbitration Agreement at issue in this case is not procedurally unconscionable. Although that Agreement is a contract of adhesion, Plaintiff's bargaining position was not so disadvantaged as to rob him of any meaningful choice but to accede. In light of his educational background – shortly before starting work at Wicked, Plaintiff graduated from college with a degree in Economics and a minor in Psychology – and the relatively short nature of the Arbitration Agreement, Plaintiff should have had no problem reading and understanding the terms of that document. Doing so would have taken no more than a few minutes. Although he claims that the human resources representative who presented him with the Arbitration Agreement was hurried, Plaintiff has presented no

evidence that he attempted to read that document and was precluded from doing so.  Therefore, the Court must presuppose that Plaintiff was aware of the terms of the Arbitration Agreement under the well-established principle that, in the absence of fraud, an individual who signs a contract is assumed to have read and understood its terms.  Morales v. Sun Constructors, Inc., 541 F.3d 218, 221-22 (3d Cir. 2008) (applying that principle in the context of an arbitration agreement, despite the plaintiff's allegation that he could not possibly have understood the contract because it was drafted in English and he spoke only Spanish).

Nor does the fact that Plaintiff's financial situation – which included a significant amount of student debt – weakened his bargaining position require the Court to find that the Arbitration Agreement is procedurally unconscionable.  See Cont'l Bank of Penn. v. Barclay Riding Acad., Inc., 459 A.2d 1163, 1176 (N.J. 1983) (Under New Jersey law, "[m]erely taking advantage of another's financial difficulty is not duress.  Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.... Under this rule, the party exerting pressure is scored only for that for which he alone is responsible." (quoting S. Williston, Contracts, § 1617 at 708 (3d ed. 1970)).  Plaintiff has presented no evidence that he could not have negotiated the terms of the Agreement or found another job.  His educational background qualified him for any number of positions, while his vocational experience was limited enough that he was not committed by virtue of long experience to one type of employment.  Compare Alexander v. Anthony Int'l, LP, 341 F.3d 256, 266 (3d Cir. 2003) (finding a similar arbitration agreement procedurally unconscionable based in part of the fact that the plaintiffs were "two long-time equipment operators with limited educational backgrounds and, at best, very narrow options for other employment.").  Given his educational background,

lack of physical disabilities or other individuals – such as dependent children or a spouse – to support, and the fact that he apparently continued to receive financial aid from his parents in the form of being allowed to reside in their home, there is no reason to believe that the degree of economic compulsion to which he was subjected rose to the egregious level necessary to result in a finding of unconscionability.  Compare Alexander, 341 F.3d at 259 (noting the dire economic straits of the low-income workers who were the plaintiffs in that case, including the fact that one of the plaintiffs "had three children in college" at the time he accepted the arbitration contract). Therefore, the Court rejects Plaintiff's argument that the Arbitration Agreement was procedurally unconscionable.

**B.  Substantive Unconscionability**

As discussed above, Plaintiff argues six different provisions within the Arbitration Agreement are substantively unconscionable, including those:  (1) barring him from obtaining injunctive relief, (2) prohibiting punitive damages awards against Wicked, (3) waiving his discovery rights, (4) imposing a one-year statute of limitations on all claims against the company, (5) requiring that he pay his own arbitration costs, and (6) providing that he may not recover attorneys' fees even if he prevails on his claims.  Based on those provisions, he contends that the Arbitration Agreement is so permeated by unconscionable terms that the Court should invalidate it entirely.

As a preliminary matter, the Court notes that many of Plaintiff's allegations of unconscionability are premised on the fact that the Arbitration Agreement contains provisions that relate only to claims by employees rather than applying equally to both parties.  To the extent that Plaintiff's arguments rely on such a lack of mutuality of obligations without any

further indicia of unfairness, those arguments must be rejected.  It is well-established that there is

"no such doctrine of complete mutuality under federal law."  Becker Autoradio U.S.A., Inc. v.

Becker Autoradiowerk GmbH, 585 F.2d 39, 47 n. 15 (3d Cir. 1978).  To the contrary, a contract

may confer rights and obligations on one party that it does not confer on the other.  The Court of

Appeals for the Third Circuit has specifically affirmed that principle in the context of arbitration

agreements.  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180 (3d Cir. 1999) ("[P]arties to an

arbitration agreement need not equally bind each other with respect to an arbitration agreement if

they have provided each other with consideration beyond the promise to arbitrate.").  State courts

considering the issue have ruled similarly.  Id. at 180-81 (citing state cases).  Therefore, the

Court will not credit Plaintiff's allegation that the Arbitration Agreement is substantively

unconscionable simply because it confers differing rights and obligations on Wicked and its

employees.  With that principle in mind, the Court turns to Plaintiff's arguments relating to the

specific provisions of the Arbitration Agreement.

### i.    *Injunctive Relief*

Plaintiff's contention that the portion of the Arbitration Agreement prohibiting him from

seeking injunctive relief is substantively unconscionable is premised entirely on the fact that

Wicked is not subject to such a prohibition.  As discussed above, such a lack of mutuality does in

itself not render an arbitration agreement unconscionable.  Therefore, the Court will disregard

Plaintiff's argument that the Arbitration Agreement must be invalidated because it precludes him

from seeking injunctive relief.

Additionally, Plaintiff's argument overlooks an important caveat contained in the

provision in question, which states that "[t]he arbitrator(s) may not award injunctive relief,

12

unless so required by law." Under the plain language of that section, the AAA may award any form of injunctive relief that is made available by the statutes under which Plaintiff's claims arise, as long as such relief appears necessary in light of precedential cases interpreting those statutes where a plaintiff was awarded injunctive relief under factual circumstances similar to the ones in this case. In other words, the requirement that the arbitrator award injunctive relief when "required by law" cannot reasonably be interpreted to allow the AAA to ignore applicable precedent and withhold injunctive relief if it is clearly called for.[1] Therefore, the Court finds that the portion of the Arbitration Agreement dealing with injunctive relief is not substantively unconscionable.

### ii.    *Punitive Damages*

Plaintiff's claim that the Arbitration Agreement must be declared unconscionable as a whole because it precludes the award of punitive damages is similarly unavailing. In making that argument, Plaintiff cites the provision in the Arbitration Agreement stating that "New Jersey's rules precluding arbitrators from awarding punitive damages shall apply in every proceeding under this Arbitration Agreement and Policy." That statement is false, and the provision in question is unconscionable. New Jersey statutes applicable to arbitration specifically provide that "[a]n arbitrator may award punitive damages or other exemplary relief if such an award is authorized by law in a civil action involving the same claim and the evidence produced at the hearing justifies the award in accordance with the legal standards otherwise applicable to the claim." N.J. Stat. Ann. § 2A:23B-21(a).

---

[1] At least one of the statutes on which Plaintiff bases his claims – Title VII – specifically provides for injunctive relief in some circumstances. 42 U.S.C. § 2000e-5(g) (setting parameters of injunctive remedies in Title VII cases); compare with Balogwan v. New Jersey, 115 F.3d 214 (3d Cir. 1997) ("Only the Secretary of Labor may initiate an action for injunctive relief under the FLSA." (citing 29 U.S.C. § 211(a)).

The unconscionability of the Arbitration Agreement's punitive damages provision does not, however, render the Agreement – either facially or as applied to Plaintiff – unconscionable as a whole.  Citing the New Jersey law excerpted above that explicitly allows arbitrators to award such damages, the AAA refused to hear the case unless Wicked agreed to waive that provision.  The company has done so.  Therefore, Plaintiff's arguments based on the Arbitration Agreement's bar on punitive damages are moot – it has been established that such damages are available, not only to Plaintiff, but to all Wicked employees that signed similar agreements.  Based on that fact, the Court finds that Plaintiff's rights will not be infringed by the requirement that his claims be adjudicated before the AAA.  Rather than declare the Arbitration Agreement entirely invalid, the Court will sever that provision and enforce its remaining terms.

### iii.    *Discovery Limitations*

The third specific provision of the Arbitration Agreement that Plaintiff claims is substantively unconscionable states that "[t]o the fullest extent permitted by law, you waive any right to any discovery procedures and to participate in any class action claim, except as set forth in the Rules of the AAA."  Plaintiff contends that waiver, which applied equally to both parties, will render any arbitration a "sham" by preventing him from gaining information about the treatment of other similarly-situated individuals.  (Pl.'s Br. Opp'n Mot. Compel Arbitration 17.)

An arbitration agreement may impose limitations on discovery as long as those limitations are not so severe as to deprive the parties of "a fair opportunity to present their claims."  Gilmer, 500 U.S. at 31 (upholding discovery limitations in the context of an employment discrimination suit based on age).  In order to determine whether the limitations on discovery contained in any given arbitration agreement are overly-restrictive, the court must

conduct a review of the specific discovery rules that will be applied, and evaluate those rules in light of the nature of the plaintiff's claims.  See Id. (noting that the discovery rules used by the arbitrator in that litigation "allow[ed] for document production, information requests, depositions, and subpoenas," and finding that such rules would allow the plaintiff sufficient opportunity to present his claims, especially in light of the fact that he would not be bound by the rules of evidence).

In this case, discovery will be governed by the rules of the AAA.  The general discovery provision contained in those rules, which Plaintiff submitted as an exhibit to his brief, provides that:

> (a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct
>
> > i) the production of documents and other information, and
> >
> > ii) the identification of witnesses to be called.

(Pl.'s Br. Opp'n Mot. Compel Arbitration, Ex. A at 13, R-21.) The rules also provide a fail-safe provision that gives the arbitrator discretion to "resolve any disputes concerning the exchange of information."  (Id.)  Moreover, the rules state that "[a]n arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently."  (Id. at 15, R-31(d).)  Thus, the AAA rules provide a mechanism whereby Plaintiff could obtain from Wicked documentary evidence or other information relating to his claims.  They allow Plaintiff to call witnesses in support of his case and provide for the resolution of discovery disputes between the parties by means of subpoena – a mechanism that would allow Plaintiff to obtain information from Wicked over the company's objections.  In light of those provisions, the Court finds that Arbitration Agreement's limitation

15

of discovery procedures to those contained in the AAA rules is not substantively unconscionable. To the contrary, the procedures available in this case are substantially similar to those the Supreme Court found adequate in <u>Gilmer</u>, 500 U.S. at 31.[2]

### iv.   *Statute of Limitations*

Plaintiff contends that the portion of the Arbitration Agreement imposing a one-year statute of limitations on all claims against Wicked is substantively unconscionable. In doing so, he acknowledges the general rule that "a provision limiting the time to bring a claim or provide notice of such a claim to the defendant is not necessarily unfair or otherwise unconscionable." <u>Alexander</u>, 341 F.3d at 266. In order for such provisions to be enforceable, however, the time period provided must be reasonable. <u>Id.</u> (citing <u>Order of United Commercial Travelers v. Wolfe</u>, 331 U.S. 586, 608 (1947)).

Plaintiff's contention that the statute of limitations provision at issue in this action is unconscionable relies heavily on two precedents. In the first, the Court of Appeals declared a similar arbitration agreement unconscionable in its entirety based substantially its finding that a provision in that agreement imposing an absolute 30-day statute of limitations on all employee claims "inappropriately assist[ed the defendant] by making it unnecessarily burdensome for an employee to seek relief." <u>Alexander</u>, 341 F.3d at 266-27. In the second of the two principal cases cited by Plaintiff, the Ninth Circuit declared unconscionable an arbitration agreement containing an absolute bar on claims filed more than one year after the incident out of which they arose because that statute of limitations deprived employees of the continuing violation and tolling doctrines applicable to claims under most state laws. See <u>Ingle v. Circuit City Stores</u>,

---

[2] The AAA discovery rules will also be sufficient if Plaintiff chooses to pursue his claim as a class action. Such a suit would be governed under the AAA rules applicable to "complex commercial disputes," which provide for significantly expanded discovery. See (Pl.'s Br. Opp'n Mot. Compel Arbitration, Ex. A at 21, L-4.)

Inc., 328 F.3d 1165, 1175 (9th Cir. 2003).

      The statute of limitations provision contained in the Arbitration Agreement at issue in this action is distinguishable from the ones invalidated in those cases.  Whereas the provision at issue in Alexander imposed a 30-day bar, the one in this case provides employees a full year to marshal their arguments before filing a claim.  Moreover, the provision in Alexander imposed an additional burden on employees by requiring that they serve written notice of their claims not only to the arbitral tribunal, but also to the company within the 30-day period.  Id. at 259-60.  Most importantly, the provision in Alexander imposed an absolute bar on all claims filed more than 30 days after "the event which forms the basis of the claim," thus precluding employees from taking advantage of the "discovery rule" and "continuing violation" doctrines.  The former would normally provide that the statute of limitations for claims based on events that were not discovered until after they occurred would not begin running until the discovery of those events.  Villalobos v. Fava, 775 A.2d 700, 704 (N.J. Super. Ct. App. Div. 2001) ("The discovery rule avoids the mechanical application of a statute of limitations by postponing the accrual of a cause of action so long as a party is unaware either that he has been injured or that the injury was due to the fault or neglect of an identifiable person.").  The latter "provides that when an individual experiences a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases."  Roa v. Roa, 985 A.2d 1225, 1231 (N.J. 2010).  Ingle presented a similar scenario; the Ninth Circuit explicitly stated that its ruling that the statute of limitations provision contained in the arbitration agreement in that case was unconscionable was based on the fact that it foreclosed "the possibility of relief under the continuing violations doctrine."  Ingle, 328 F.3d at 1175.

In contrast, the statute of limitations provision at issue in this case states that Wicked employees must submit their claims for arbitration "within one year of when the dispute or claim arose." That language is similar to the statute of limitations applicable to personal injury claims and suits under the NJLAD, which requires plaintiffs to assert their claims within two years "after the cause of any such action shall have accrued." N.J. Stat. Ann. § 2A:14-2; Montell v. Haynes, 627 A.2d 654, 659 (N.J. 1993) (applying the statute of limitations for personal injury claims to the NJLAD). It is well-established under New Jersey law that both the discovery rule and continuing violation doctrine apply to that statute of limitations. See, e.g., Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 621 (N.J. 2002) (continuing violation doctrine); Brunell v. Wildwood Crest Police Dep't, 822 A.2d 576, 598 (N.J. 2003) (discovery rule). Therefore, based on the similarity between the "when the claim arose" language used in the statute of limitations provision contained in Plaintiff's Arbitration Agreement and the "when the claim accrued" language used in New Jersey's two-year statute of limitations, the Court finds that both the continuing violation doctrine and discovery rule would toll the one-year statute of limitations in the Arbitration Agreement.

In light of that finding, the rulings by the Court of Appeals and Ninth Circuit in Alexander and Ingle, respectively, are inapplicable to this case. To the contrary, the statute of limitations provision contained in Plaintiff's arbitration agreement is less restrictive than similar provisions that have been upheld. See Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1042-47 (9th Cir. 2001) (upholding six-month limitation provision for bringing suit but striking down 10-day contractual notice of suit requirement as unconscionable); Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1205-06 (7th Cir. 1991) (upholding the same

limitation provision in another employee's contract); 1205-06 (7th Cir. 1991) (upholding the

same limitation provision in another employee's contract); <u>Meyers v. Western & Southern Life</u>

<u>Ins. Co.</u>, 849 F.2d 259, 260 (6th Cir. 1988) (same).  Therefore, the Court finds that the statute of

limitations provision contained in Plaintiff's Arbitration Agreement is not substantively

unconscionable.

> **v.     *Arbitration Fees***

Plaintiff asserts that the portion of the Arbitration Agreement requiring each party to pay

its own fees is substantively unconscionable because it requires him to bear expenses that are

beyond his means, thus prohibiting him in practical terms from seeking relief.  That claim is

premised on a calculation of the potential expenses that uses fees applicable to class actions

rather than individual suits – thus assuming (1) that Plaintiff could not pursue his claims

individually, and (2) that if he did so by means of a class action, no other class member would

contribute to his arbitration expenses.  Both assumptions are untenable, and Plaintiffs assertion

that the fee-sharing provision contained in the Arbitration Agreement is substantively

unconscionable is therefore unavailing.

When "a party seeks to invalidate an arbitration agreement on the ground that arbitration

would be prohibitively expensive, that party bears the burden of showing the likelihood of

incurring such costs."  <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 92 (2000).  In

determining whether a payment scheme imposes a prohibitive burden on a plaintiff, a district

court must apply a case-by-case analysis, taking into account the plaintiff's individual

circumstances and evaluating all available evidence relating to the likely cost of pursuing his or

her claims.  <u>Spinetti v. Serv. Corp. Int'l</u>, 324 F.3d 212, 216-17 (3d Cir. 2003) (invalidating a

payment scheme in which the plaintiff, who was unable to pay her monthly expenses of over $2,000 without taking cash advances from credit cards because she earned only $300 per week, would have been required to pay $4,250 in assorted filing fees and an additional charge of $150 per day).

Plaintiff estimates that the total costs of litigating his claims would be approximately $68,500. That expense includes a "preliminary filing fee" of $3,250, an "initial filing fee" of roughly $8,000, and a "case service fee" of $3,250. Plaintiff obviously could not afford such exorbitant fees. He has been unemployed since being terminated by Wicked, and his sole source of income is $526 per week in unemployment benefits, which may expire at any time (depending on whether the federal government continues providing temporary aid so that states can extend such benefits). Despite the fact that Plaintiff resides with his parents, and therefore presumably does not pay housing costs, he claims that his monthly expenses generally exceed his income. Those expenses include payments on his approximately $16,000 in student debt.

Plaintiff's contention that he will be unable to bear the expense of pursuing his claims is less tenable, however, when that expense is calculated using the fee schedule applicable to individual – rather than class action – arbitrations. As set forth in both the AAA's fee schedule and a letter sent by that organization to the parties on May 14, 2009, individuals who submit claims against their employer to a single arbitrator are only required to pay a one-time filing fee of $150, while the employer must pay a similar fee of $900. (Def.'s Reply Br. Supp. Mot. Compel Arbitration, Exs. B at 2; C at 1.) Hearing fees of $300 per day are imposed solely on the employer, leaving the individual with no hearing expenses whatsoever. (Id., Ex. C at 2.) Similarly, miscellaneous expenses such as travel and witness accommodation fees are imposed

exclusively on the employer.  (Id.)

In light of those provisions, it appears that the fee schedule to which Plaintiff would be subject if he brought his claim individually has been carefully tailored to make it as likely as possible that an employee who has been wronged by his or her former employer will be able to pursue a claim, regardless of financial means.  Plaintiff's monthly income of approximately $2,104 is more than sufficient to cover the one-time $150 filing fee to which he will be subject, especially when viewed in light of the fact that he pays little to no housing expenses.  Should Plaintiff choose instead to pursue his claim as a class action, his costs will likely be substantially defrayed by other plaintiffs – of which he asserts there are "hundreds."  Therefore, the Court finds that the provision in Plaintiff's Arbitration Agreement requiring that each party pay its own arbitration expenses is not substantively unconscionable.

### vi.    Attorneys' Fees

The final provision of the Arbitration Agreement that Plaintiff contends is substantively unconscionable states that "[u]nless otherwise required by law, the arbitrator(s) … may not award attorneys' fees or legal costs."  In doing so, Plaintiff notes that Title VII, the NJLAD, and FLSA all provide for an award of attorneys' fees to an individual who prevails on a claim under those statutes.  See 42 U.S.C. § 2000e-5(k) (Title VII); N.J. Stat. Ann. § 10:5-27.1 (NJLAD); 29 U.S.C. § 216(b) (FLSA).  Based on those provisions, he claims that the Arbitration Agreement unconscionably removes the incentive for individuals to pursue claims where the cost of doing so might substantially dilute their recovery.

As was the case with Plaintiff's claim that relating to the Arbitration Agreement's prohibition on injunctive relief, his argument with respect to attorneys' fees and costs fails to

take into account the caveat contained in that provision – the arbitrator is prohibited from awarding such fees and costs "unless required by law."  Thus, a plaintiff may recover attorneys' fees and costs in cases where a statute provides for such an award and precedents involving similar factual circumstances resulted in one.  Given the fact that Plaintiff's claims in this case are premised on statutes allowing for such awards, he may be entitled to attorneys' fees if he prevails.  Therefore, the Court finds that the attorneys' fees provision contained in the Arbitration Agreement is not substantively unconscionable.

**C. Severability**

In light of its rulings that the Arbitration Agreement is not procedurally unconscionable and only one provision of that document – the one prohibiting punitive damages awards – is substantively unconscionable, the Court will sever the punitive damages provision and enforce the remainder of the Arbitration Agreement.  Such a result is in keeping both with the "liberal federal policy favoring arbitration agreements," Gilmer, 500 U.S. at 24, and applicable precedents dealing with similar factual circumstances.  Compare Spinetti, 324 F.3d at 214 (refusing to invalidate an entire arbitration agreement in which only two provisions were substantively unconscionable, and stating that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly.") with Alexander, 341 F.3d at 271 (striking entire agreement because the majority of its terms were unconscionable and stating that "[t]he cumulative effect of so much illegality prevents us from enforcing the arbitration agreement.  Because the sickness has infected the trunk, we must cut down the entire tree.").

## III.  CONCLUSION

For the reasons set forth above, Wicked's Motion to Compel Arbitration is granted.

Plaintiff's suit is dismissed in favor of the pending arbitration before the AAA.

 s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 31, 2010

23